Office of the Attorney General · State of Texas



April 27, 2001

Mr. Robert J. Huston
Chair, Texas Natural Resource
  Conservation Commission
P.O. Box 13087
Austin, Texas 78711-3087

Opinion No. JC-0372

Re: Whether certain types of property at new facilities qualify for a tax exemption as pollution-control property under section 11.31 of the Tax Code (RQ-330-JC)

Dear Mr. Huston:

Section 11.31 of the Tax Code provides that a person is entitled to a tax exemption for all or part of real or personal property "used wholly or partly as a facility, device, or method for the control of air, water, or land pollution." TEX. TAX CODE ANN. § 11.31(a) (Vernon Supp. 2001). You ask whether pollution-control devices and methods of production that limit pollution at new facilities qualify for a tax exemption under this provision.[1] We conclude that they do, but that the Texas Natural Resource Conservation Commission ("TNRCC") must administer the tax exemption to grant exemptions to only that portion of property that actually controls pollution.

Before addressing your specific questions, we briefly review the legal framework. In 1993, the legislature proposed an amendment to the Texas Constitution, which the voters approved, providing for an exemption from ad valorem taxation for real and personal property used to control pollution.[2] That constitutional provision, article VIII, section 1-*l*, provides as follows:

> (a) The legislature by general law *may* exempt from ad valorem taxation all or part of real and personal property used, constructed, acquired, or installed wholly or partly to meet or exceed rules or regulations adopted by any environmental protection agency of the United States, this state, or a political subdivision of this state for the prevention, monitoring, control, or reduction of air, water, or land pollution.

---

[1]*See* Letter from Robert J. Huston, Chair, Texas Natural Resource Conservation Commission, to Honorable John Cornyn, Texas Attorney General (Dec. 22, 2000) (on file with Opinion Committee) [hereinafter Request Letter].

[2]*See* Tex. H.J. Res. 86, 73d Leg., R.S., 1993 Tex. Gen. Laws 5576 (adopted Nov. 2, 1993).

(b) This section applies to real and personal property used as a facility, device, or method for the control of air, water, or land pollution that would otherwise be taxable for the first time on or after January 1, 1994.

(c) This section does not authorize the exemption from ad valorem taxation of real or personal property that was subject to a tax abatement agreement executed before January 1, 1994.

Tex. Const. art. VIII, § 1-*l* (emphasis added). This constitutional provision uses the word "may" with respect to the legislature's authority to adopt a statute, rather than "shall" or "must." Thus, it permits but does not require the legislature to provide a tax exemption for pollution-control property. *See Rooms With A View, Inc. v. Private Nat'l Mortgage Ass'n Inc.*, 7 S.W.3d 840, 844 (Tex. App.–Austin 1999, pet. denied) ("We use the same guidelines in interpreting constitutional provisions as we do interpreting statutes."); TEX. GOV'T CODE ANN. § 311.016(1) (Vernon 1998) (unless context requires a different construction the word "'[m]ay' creates discretionary authority or grants permission or a power").

At the same time the legislature proposed this constitutional amendment, it also enacted section 11.31 of the Tax Code as implementing legislation, which became effective on January 1, 1994.[3] Section 11.31 defines the property eligible for the tax exemption, *see* TEX. TAX CODE ANN. § 11.31(a), (b), (g) (Vernon Supp. 2001), and establishes a procedure whereby taxpayers seeking the exemption submit information to your agency, the TNRCC, for a determination as to whether the property at issue is a pollution-control facility, device, or method, *see id.* § 11.31(c)-(f).

With respect to defining property eligible for the tax exemption, section 11.31 provides in pertinent part:

(a) A person is entitled to an exemption from taxation of all or part of real and personal property that the person owns and that is used wholly or partly as a facility, device, or method for the control of air, water, or land pollution. A person is not entitled to an exemption from taxation under this section solely on the basis that the person manufactures or produces a product or provides a service that prevents, monitors, controls, or reduces air, water, or land pollution. Property used for residential purposes, or for recreational, park, or scenic uses as defined by Section 23.81, is ineligible for an exemption under this section.

---

[3]*See* Act of May 10, 1993, 73d Leg., R.S., ch. 285, § 5, 1993 Tex. Gen. Laws 1322, 1324 (act to take effect only upon voters' approval of constitutional amendment proposed by House Joint Resolution 86).

(b) In this section, "facility, device, or method for the control of air, water, or land pollution" means land that is acquired after January 1, 1994, or any structure, building, installation, excavation, machinery, equipment, or device, and any attachment or addition to or reconstruction, replacement, or improvement of that property, that is used, constructed, acquired, or installed wholly or partly to meet or exceed rules or regulations adopted by any environmental protection agency of the United States, this state, or a political subdivision of this state for the prevention, monitoring, control, or reduction of air, water, or land pollution. This section does not apply to a motor vehicle.

*Id.* § 11.31(a), (b). Consistent with the constitutional provision, the statute provides that the tax exemption may not apply to a facility, device, or method for the control of air, water, or land pollution that was subject to a tax abatement agreement executed before January 1, 1994. *See id.* § 11.31(g). In addition, the legislation enacting section 11.31 provided that this tax exemption applies only to pollution control property that is constructed, acquired, or installed after January 1, 1994. *See* Act of May 10, 1993, 73d Leg., R.S., ch. 285, § 5(b), 1993 Tex. Gen. Laws 1322, 1325.

The TNRCC is charged with administering the statute by determining whether property qualifies for the pollution-control tax exemption. Specifically, the TNRCC is charged with determining "if the facility, device, or method is used wholly or partly as a facility, device, or method for the control of air, water, or land pollution." TEX. TAX CODE ANN. § 11.31(d) (Vernon Supp. 2001). In addition to determining whether the property controls pollution, the TNRCC must also determine the proportion of the property devoted to that purpose. The statute provides that "[i]f the installation includes property that is not used wholly for the control of air, water, or land pollution, the person seeking the exemption shall also present such financial or other data as the executive director requires by rule for the determination of the proportion of the installation that is pollution control property." *Id.* § 11.31(c). In the event a facility, device, or method is used only partly to control pollution, the TNRCC must provide a letter stating what portion of the property is a facility, device, or method for the control of pollution. *See id.* § 11.31(d) ("If the executive director determines that the facility, device, or method is used wholly or partly to control pollution, the director shall issue a letter to the person stating that determination and the proportion of the installation that is pollution control property.").

You ask whether certain types of property at new facilities qualify for a tax exemption as pollution-control property under section 11.31 of the Tax Code. Your question is limited to equipment new to a location: "equipment for a process or product that has never been produced at that location; that is, a new facility." Request Letter, *supra* note 1, at 2. You ask about two types of equipment. You are concerned about that equipment that is added on to production equipment to control pollution, which you refer to as "add-on control equipment." *See* Request Letter, *supra* note 1, at 2. You are also concerned about equipment used to make a product that limits pollution

by its design, which we will refer to as pollution-reducing production equipment. The following example provided in your letter contrasts the two types of equipment:

> The owner of a new [electricity-generating] boiler elects to construct the facility so that it will emit less NOx [emissions] than is required to meet best achievable control technology or the requirements of 30 TAC Chapter 117. . . . [T]he emissions level could be achieved by adding controls to the end of the process. Alternatively, the same emissions level could be reached by a unit that is designed to achieve more complete combustion.

Request Letter, *supra* note 1, at 3. You ask us to assume that the equipment would meet or exceed environmental requirements.

Your question is as follows:

> Is equipment, of a type new to a location, that is used to make a product and by its design limits pollution, or add-on control equipment installed on new equipment, within the category of property used for pollution control under § 11.31 of the Texas Tax Code?

Request Letter, *supra* note 1, at 2. We gather your concern is whether a distinction should be made between measures taken to address pollution that is already being generated by an existing facility as opposed to pollution that will be generated in the future by a new facility. You also want to know whether pollution-reducing production equipment and add-on control equipment should be treated differently.

As there are no Texas judicial opinions addressing the contours of the section 11.31 tax exemption, the issues you raise are questions of first impression. When construing a statute, "our primary objective is to give effect to the Legislature's intent." *Mitchell Energy Corp. v. Ashworth*, 943 S.W.2d 436, 438 (Tex. 1997). To give effect to legislative intent, we construe a statute according to its plain language. *See RepublicBank Dallas v. Interkal, Inc.*, 691 S.W.2d 605, 607-08 (Tex. 1985); *Bouldin v. Bexar County Sheriff's Civil Serv. Comm'n*, 12 S.W.3d 527, 529 (Tex. App.–San Antonio 1999, no pet.). Statutory words and phrases must be "read in context and construed according to the rules of grammar and common usage." TEX. GOV'T CODE ANN. § 311.011(a) (Vernon 1998). Finally, exemptions from taxation are not favored by the law and "are subject to strict construction because they undermine equality and uniformity by placing a greater burden on some taxpayers rather than all." *Baptist Mem'ls Geriatric Ctr. v. Tom Green County Appraisal Dist.*, 851 S.W.2d 938, 942 (Tex. App.–Austin 1993, writ denied) (citing *N. Alamo Water Supply Corp. v. Willacy County Appraisal Dist.*, 804 S.W.2d 894, 899 (Tex. 1991)). The latter rule of construction guides us when a statute providing a tax exemption is ambiguous. It should not be employed to construe a tax exemption provision contrary to its plain meaning.

First, we consider whether the statute should apply differently to new versus old facilities. Section 11.31 is broadly written, and we believe its plain meaning is clear. It embraces any property, real or personal, "that is used *wholly or partly* as a *facility, device, or method* for the control of air, water, or land pollution." TEX. TAX CODE ANN. § 11.31(a) (Vernon Supp. 2001) (emphasis added). "[F]acility, device, or method for the control of air, water, or land pollution" is specifically defined to mean:

> land that is acquired after January 1, 1994, or any structure, building, installation, excavation, machinery, equipment, or device, and any attachment or addition to or reconstruction, replacement, or improvement of that property, that is used, constructed, acquired, or installed wholly or partly to meet or exceed rules or regulations adopted by any environmental protection agency of the United States, this state, or a political subdivision of this state for the prevention, monitoring, control, or reduction of air, water, or land pollution.

*Id.* § 11.31(b). This broad definition is not inconsistent with the constitutional provision authorizing the tax exemption. *See* TEX. CONST. art. VIII, § 1-*l*(a) ("real and personal property *used, constructed, acquired, or installed wholly or partly* to meet or exceed rules or regulations adopted by any environmental protection agency of the United States, this state, or a political subdivision of this state for the prevention, monitoring, control, or reduction of air, water, or land pollution"), (b) ("This section applies to real and personal property used as a *facility, device, or method* for the control of air, water, or land pollution that would otherwise be taxable for the first time on or after January 1, 1994.") (emphasis added).

Section 11.31 makes no distinction between property controlling pollution generated by an existing facility and property controlling pollution generated by a new facility. The statute contains only one temporal limitation. In order for land to be exempt, it must be acquired after January 1, 1994, the statute's effective date. *See* TEX. TAX CODE ANN. § 11.31(b) (Vernon Supp. 2001). In addition, the legislation enacting section 11.31 provided that the tax exemption applies only to pollution control property that is constructed, acquired, or installed after January 1, 1994. *See* Act of May 10, 1993, 73d Leg., R.S., ch. 285, § 5(b), 1993 Tex. Gen. Laws 1322, 1325. Furthermore, in defining "facility, device, or method for the control of air, water, or land pollution," subsection (b) of section 11.31 uses words that embrace new facilities as well as changes to existing facilities: "any structure, building, installation, excavation, machinery, equipment, or device, and any attachment or addition to or reconstruction, replacement, or improvement of that property, that is used, constructed, acquired, or installed." TEX. TAX CODE ANN. § 11.31(b) (Vernon Supp. 2001). In sum, on its face section 11.31 applies to pollution-control property added to any facility after January 1, 1994. There is no basis in the statute for limiting the tax exemption only to pollution-control property added to an existing facility.

Next, we consider whether section 11.31 excludes from its scope pollution-reducing production equipment. Significantly, the statute applies to property used "wholly or partly" for pollution control. *See id.* § 11.31(a). To qualify for the exemption, property must be used "wholly or partly" to meet or exceed environmental rules. *See id.* § 11.31(b). The term "wholly" clearly refers to property that is used only for pollution control, such as an add-on device. *See* MERRIAM WEBSTER'S COLLEGIATE DICTIONARY 1351 (10th ed. 1993) (defining "wholly" to mean "to the full or entire extent: . . . to the exclusion of other things"). The term "partly," however, embraces property that has only *some* pollution-control use. *See id.* at 848 (defining "partly" to mean "in some measure or degree"). This broad formulation clearly embraces more than just add-on devices. Furthermore, that statute clearly embraces not only "facilities" and "devices" but also "methods" that prevent, monitor, control, or reduce pollution. "Methods" is an extremely broad term that clearly embraces means of production designed, at least in part, to reduce pollution. *See id.* at 732 (defining "method" to include "a way, technique, or process of or for doing something").

Based on its plain language and the common meaning of the terms "wholly," "partly," and "method," we conclude that section 11.31 clearly extends to, in your words, "equipment . . . that is used to make a product and by its design limits pollution." Request Letter, *supra* note 1, at 2. We stress, however, that under section 11.31 the owner of pollution-reducing production equipment, property that serves both a production and a pollution-reduction purpose, is not entitled to a tax exemption on the total value of the property. Rather, pollution-reducing production equipment may receive only a partial tax exemption. The TNRCC has been charged by the legislature with determining what portion of such property is a "facility, device, or method for the control" of pollution. *See* TEX. TAX CODE ANN. § 11.31(d) (Vernon Supp. 2001) ("If the executive director determines that the facility, device, or method is used wholly or partly to control pollution, the director shall issue a letter to the person stating that determination and the proportion of the installation that is pollution control property."). The person seeking the exemption must "present such financial or other data as the [TNRCC] executive director requires by rule for the determination of the proportion of the installation that is pollution control property." *Id.* § 11.31(c). Given that tax exemptions are not favored by the law, *see N. Alamo Water Supply Corp.*, 804 S.W.2d at 899, the TNRCC must adopt rules and administer the statute to limit tax exemptions to only that portion of property that serves a pollution-control, as opposed to a production, purpose.

We have received several briefs that argue that pollution-reducing production equipment should not receive a tax exemption because production equipment is a source of pollution and is designed to produce rather than reduce pollution. This argument ignores the broad scope of section 11.31. Again, section 11.31 exempts not only those facilities, devices and methods what are wholly used to control pollution, but also those that are used only partly to control pollution. Furthermore, if the TNRCC grants tax exemptions only to that portion of property that reduces pollution, the portion of the property that produces pollution will not fall within the scope of the exemption and will be taxed.

In sum, in answer to your question whether "equipment, of a type new to a location, that is used to make a product and by its design limits pollution, or add-on control equipment installed on

new equipment" falls within the scope of section 11.31, we conclude that both add-on control equipment installed in a new facility and pollution-reducing production equipment installed in a new facility qualify for a tax exemption under that provision. However, the TNRCC must administer the tax exemption to grant exemptions to only that portion of property that actually controls pollution. The legislature may want to provide the TNRCC with additional guidance regarding the proper criteria for assessing what portion of property actually controls pollution.[4]  In addition, the constitution permits the legislature to narrow or eliminate this tax exemption for pollution-control property if it determines that the exemption is burdensome to taxing units or unfair to other taxpayers. *See* discussion *supra* pp. 1-2.

---

[4]A bill is currently pending before the legislature that would, among other things, require the TNRCC to enact rules that would "allow for determinations that distinguish the proportion of property that is used to control, monitor, prevent, or reduce pollution from the proportion of property that is used to produce goods or services." Tex. H.B. 3121, 77th Leg., R.S. (2001).

## S U M M A R Y

        Add-on pollution-control devices and methods of production that limit pollution at new facilities are entitled to a tax exemption under section 11.31 of the Tax Code. The Texas Natural Resource Conservation Commission must administer the tax exemption to grant exemptions to only that portion of property that actually controls pollution.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

ANDY TAYLOR
First Assistant Attorney General

SUSAN D. GUSKY
Chair, Opinion Committee

Mary R. Crouter
Assistant Attorney General - Opinion Committee